TEMPLE TERRACE ASSETS CO., INC., and W. C. SPENCER, as Sheriff of Hillsborough County, v. M. C. WASON, MARY E. PETTINGILL, *et vir.*

163 So. 72.

Division B.

Opinion Filed August 28, 1935.

Rehearing Denied September 20, 1935.

Henry E. Williams, for Appellants;

John M. Allison and Sam Bucklew, for Appellee, Wason; Hill & Hill, for Appellees, Miller.

BUFORD, J.—The appeal brings for review final decree enjoining the sale under execution of certain described real estate and dismissing a cross bill.

The bill of complaint alleged that the property described therein and upon which execution had been levied on a judgment obtained against Mary E. Pettingell Miller and Frank William Miller, her husband, was the property of the com-

plainant, M. C. Wason. It alleged that the complainant on the 20th day of February, 1932, purchased for the sum of $2,700.00 the said property from Mary E. Pettingell Miller and Frank William Miller, her husband, and that they, the said vendors, conveyed and transferred the described property to the complainant by warranty deed. The deed was filed for record in the public records of Hillsborough County, Florida, on February 20th, 1932, and recorded in a certain book and page; that the complainant has since that date been the *bona fide* owner of said property and has "exercised his dominion over same."

It alleges that Temple Terrace Assets Company, Inc., a corporation, on May 17th, 1932, recovered final judgment against Mary E. Pettingell Miller and Frank William Miller, her husband, in the Circuit Court of Hillsborough County in the full amount of $5,466.45 and that the named plaintiff in such suit had caused levy of execution to be made upon the property described in the bill of complaint and alleged to be owned by the complainant.

The answer of the defendant, Temple Terrace Assets Co., Inc., denied the conveyance of title from the Millers to the complainant, but admitted that the Millers did make a deed which purported to convey the property to the complainant and that the same was recorded as alleged. It denies that the complainant has since the date of the deed been the *bona fide* owner of the property described in the bill or that he has exercised dominion over the same.

The answer then alleges in effect that Mary E. Pettingell Miller prior to her marriage with Frank William Miller, together with one Rhena V. Webster, a niece of Mrs. Miller, purchased certain property in Hillsborough County and made, executed and delivered notes for the payment of such property. That on the 9th day of February, 1932,

Mary E. Pettingell Miller was the owner of and she and her husband, Frank William Miller, occupied the premises described in the bill of complaint and then owned and used the furnishings and fixtures thereon; that this property was immediately opposite the residence of Rhena V. Webster, niece of Mary E. Pettingell Miller, where Wason also lived; that on the 9th day of February, 1932, the defendant commenced three actions of law against the said Mary E. Pettingell Miller and her husband, Frank William Miller, to recover judgment on three of the notes above referred to and claimed damages in the sum of $10,000.00 in each of the said three actions. That on the same date summons *ad respondendum* in each of the said actions was served upon defendants named therein by the Sheriff of Hillsborough County.

It is then alleged:

"That on, to-wit: the 20th day of February, said Mary E. Pettingell Miller, joined by her husband, Frank W. Miller, being thus indebted to this defendant and intending or contriving not to pay said debt, and pending suit for the collection of said debt, executed and delivered a deed conveying the premises described in the bill to complainant, M. C. Wason. The said deed was recorded February 20, 1932, at eleven (11) A. M. in Deed Book 946, page 335, in the office of the Clerk of the Circuit Court of Hillsborough County, Florida. That said deed purports to have been signed, sealed and delivered in the presence of, and to have been acknowledged before, one R. C. Ricker. That prior to the date of the execution of said deed, the said R. C. Ricker had acted as confidential business agent for the said Mary E. Pettingell Miller in the loan by her of certain moneys, which loans the said Ricker assured her were good, and said loans having proven to have been im-

providently made, the said Ricker became and was and felt greatly obligated to her on account of such loans. That said deed purports to have been witnessed before one Duval M. Smith. That said Duval M. Smith is an employee and/or business associate of said R. C. Ricker. A copy of said deed is attached hereto marked 'Defendant's Exhibit A.' That this conveyance was made and contrived of fraud, covin, collusion, and guile to the intent and purpose to delay, hinder and defraud the creditors of Mary E. Pettingell Miller of their just and lawful debts, and especially to delay, hinder and defraud this defendant of its said debt.

"11. The complainant, M. C. Wason, took said conveyance from said Mary E. Pettingell Miller and her husband, well knowing the fraudulent purpose and character thereof, and with intent to aid said Mary E. Pettingell Miller and her husband, Frank Wm. Miller, to hinder, delay and defraud the creditors of the said Mary E. Pettingell Miller, especially this defendant, of their just debts, and this defendant avers that said conveyance was collusively made and that there is a secret agreement between the said complainant, M. C. Wason, and said Mary E. Pettingell Miller and her husband, whereunder the said complainant, M. C. Wason, is to hold said land in secret trust and for the benefit of said Mary E. Pettingell Miller.

"12. Said conveyance recites that it was made for and in consideration of the sum of Ten Dollars ($10.00) and other valuable considerations to them in hand paid. Defendant charges that this recital is absolutely false; that no cash or other consideration was paid at all; and that if any was pretended to be paid, it was a mere device in furtherance of the covin, collusion, and fraud whereby the said M. C. Wason and Mary E. Pettingell Miller and her hus-

band were contriving to hinder and delay this defendant. That the alleged consideration, if paid, was grossly inadequate. .

13. That on, to-wit: the 7th day of March, 1932, said Mary E. Pettingell Miller and her husband, Frank Wm. Miller, personally filed their appearance in the three (3) said actions commenced against them on, to-wit: February 9, 1932, but thereafter made no defense and the three (3) said actions were permitted to go by default, and a final judgment in each of the said three (3) actions was entered and recorded in favor of this defendant and against the said Mary E. Pettingell Miller and her husband, Frank Wm. Miller, directing execution to be satisfied solely out of the lands and tenements, goods and chattels of the defendant, Mary E. Pettingell Miller. A copy of each of said judgments is attached hereto, made a part hereof, and marked 'Defendant's Exhibit B,' 'Defendant's Exhibit C,' and 'Defendant's Exhibit D,' respectively. That no part of either of said judgments has been paid, and each of said judgments remains in full force and virtue and in no wise set aside, reversed or held for naught.

"14. That said Mary E. Pettingell Miller, being the owner of and in possession of said property, as hereinbefore alleged, on the 20th day of February, 1932, did continue in the possession and occupancy of said premises until sometime in the month of May, 1932, when she and/or her husband, Frank Wm. Miller, left the State for the summer and he returned to the State of Maine, and she went upon an extensive European tour upon moneys arising from a fund created many years ago by a former husband and herself for that express purpose. That shortly prior to her departure from the State, said Mary E. Pettingell Miller placed an advertisement in the Tampa Morning Tribune

requesting anyone desiring to rent an attractive furnished home for the summer to call telephone No. S-3834, being the, telephone installed on the premises described in the bill; that Mr. Harold S. Coston and also his wife called said number and talked with said Mary E. Pettingell Miller, and as a result of said telephone conversation said Coston and wife visited the premises described in the bill and there interviewed Mary E. Pettingell Miller, who represented to them that the said premises was her home, that she was leaving for the summer and wished to rent it at a small rental to someone who would take good care thereof during her absence, and Mary E. Pettingell Miller thereupon rented the said premises and dwelling and furniture and fixtures to said Harold S. Coston for the summer and until the 1st day of October, A. D. 1930, at and for a cash consideration of Fourteen Dollars ($14.00) per month; that the said Harold S. Coston paid the rental in advance in cash, and the said Mary E. Pettingell Miller signed in her own name and delivered to him a receipt for said rent; that on said date in May, the said Harold S. Coston moved into said property as tenant of Mary E. Pettingell Miller and continued to occupy said premises until the said 1st day of October, 1932, at which time the said Harold S. Coston delivered up possession of said premises to the said Mary E. Pettingell Miller, who moved into the property and continues to occupy the same. That the telephone directory of the City of Tampa issued July, 1932, and that issued January, 1933, list 'Miller, Frank Wm. r 206 W Haya.... S 3834.'"

The counter claim, or cross bill, prayed, amongst other things:

"That the said conveyance to complainant, M. C. Wason, be decreed to be fraudulent, null and void, as against this

defendant, and that the said parcels of land and the furnishings and fixtures thereon be sold and the proceeds of said sale applied towards the satisfaction of the debt of this defendant. And if any balance remain, that said balance be deposited in the registry of the Court for the account of complainant, M. C. Wason, and said Mary E. Pettingell Miller and her husband, Frank Wm. Miller, as their interest may appear."

Numerous questions are presented and badges of fraud are shown, but we conceive it to be that one well settled principle of law must control the disposition of this litigation, and, therefore, we shall deal with only the application of that principle.

The record shows beyond question that assuming that the Millers attempted to sell and convey the lands described to Wason for a valuable consideration and although they made and executed a warranty deed purporting to convey the title, they did not in fact convey and transfer the title to Wason as against creditors because, accepting their version of the transaction as the truth, they reserved possession and right of possession in the property for a period of one year from the making and delivery of the deed.

It is also apparent in the record that although they reserved possession of the property for one year from the making of the deed, they continued in possession and exercising dominion over the property up until the time of the taking of testimony and the filing of the report of the Master in this cause.

It is true that sometime after the terms of the sale were agreed upon and according to the preponderance of the evidence in the record, and after the deed was executed and delivered a lease unwitnessed, unacknowledged and unrecorded, appears to have been executed by Wason to

Frank Wm. Miller. But this pretended lease could have no force or effect in view of the uncontradicted testimony that it was agreed between the parties that the Millers would sell and convey the property to Wason for an agreed consideration but with the stipulation and agreement that the Millers should retain possession of the property for a period of one year from the date of the deed, which stipulation was carried into full effect by the action of the parties.

The principles of law applicable to a case of this sort are clearly stated in the case of Lukins v. Aird, 6 Wall. 78, 80, 18 Law Ed. 750, in which case the Supreme Court of the United States, speaking through Mr. Justice DAVIS, said:

"It is not important to inquire whether, as a matter of fact, the defendants had a purpose to defraud the creditors of Aird, for the fraud in this case is an inference of law, on which the court is as much bound to pronounce the conveyances in question void as to creditors, as if the fraudulent intent were directly proved. There is no necessity of any general discussion of the provisions of the Statutes of Elizabeth, concerning fraudulent and voluntary conveyances, as this suit is within narrow limits, and the principle on which we rest our decision too well settled for controversy. The law will not permit a debtor, in failing circumstances, to sell his land, convey it by deed, without reservations, and yet secretly reserve to himself the right to possess and occupy it for a limited time for his own benefit. Wooten v. Clark, 23 Miss. 75; Arthur v. Com. & R. R. Bk., 9 Sm. & M. 394; Towle v. Holt, 14 N. H. 61; Paul v. Crooker, 8 N. H. 288; Smith v. Lowell, 6 N. H. 67. Such a transfer may be upon a valuable consideration, but it lacks the element of good faith; for while it pro-

fesses to be an absolute conveyance on its face, there is a concealed agreement between the parties to it, inconsistent with its terms, securing a benefit to the grantor, at the expense of those he owes. A trust, thus secretly, created, whether so intended or not, is a fraud on creditors, because it places beyond their reach a valuable right—the right of possession—and gives to the debtor the beneficial enjoyment of what rightfully belongs to his creditors.

"In this case the conveyances which are impeached are attended with a trust of this nature, and cannot be sustained against the creditors of Aird. It is in proof that Aird retained the possession of the premises, which he sold and conveyed, from the 23rd day of November, 1853, the date of the deed, until the Spring of 1856, in pursuance of a parol agreement, incompatible with the conditions of the deed. By this agreement he reserved the right of possession for one year free of rent, and this reservation constituted a part of the consideration paid by Spring for the property and, being contrary to the provisions of the deed, was the creation of a secret trust, for the benefit of Aird, to the extent of the interest reserved, and therefore rendered the conveyance fraudulent as to creditors and void. If Spring could, in this way, pay part of the consideration, why not extend the term of the reservation and pay the whole of it? It makes no difference in the legal aspect of this case, that the interest reserved was not of great value. It is enough that it was a substantial interest, for the benefit of the grantor, reserved in a manner which was inconsistent with the provisions of the deed."

The decision above quoted was cited with approval by this Court in the case of Newbert, *et al.,* v. Massman Bros. & Co., *et al.,* 37 Fla. 91, 19 Sou. 625.

The facts in this case show that this debtor was not only

in failing circumstances, but that this property was the only property owned by the defendant, Mrs. Miller, which could be reached by execution. It is further shown that she attempted to transfer the title to the property after suit had been instituted and service had been had on her; that in such suit she interposed no defense and that judgment was entered against her in due course.

Under such conditions, the law will not permit a debtor to sell her land, convey it by deed without reservations and yet, secretly reserve unto herself the right to possess and occupy same for a limited time for her own benefit, although such transfer may be for a valuable consideration.

Possession and the right of possession are elements of the muniments of title and an attempted conveyance without the delivery of possession or the right of possession falls short of a conveyance of title. See also Bellini v. Neas, 146 Atl. 634, 68 A. L. R. 303, and annotations.

Whether, as a matter of fact, the parties to this transaction had a purpose to defraud the creditors of Mrs. Miller is of no importance because the fraud in this case is an inference of law on which the Court is bound to pronounce the conveyance in question void as to creditors and it is immaterial that the parties were not advised that this would be the legal effect of such a transaction.

For the reasons stated, the decree appealed from must be reversed with directions that the injunction be dissolved and that a decree be entered directing the deed from Mary E. Pettingell Miller and her husband, Frank William Miller, herein referred to, be held to be null and void and that it be cancelled of record.

It is so ordered.

Reversed and remanded.

ELLIS, P. J., and TERRELL, J., concur.

WHITFIELD, C. J., and DAVIS, J., concur in the opinion and judgment.